IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BFO FACTORY SHOPPES LLC, a foreign company doing business in Washington State, | ) ) ) | No. 79236-9-I |
| | ) | DIVISION ONE |
| Respondent, | ) ) | |
| v. | ) ) | |
| EDDIE BAUER LLC, a foreign company doing business in Washington State, | ) ) ) ) | UNPUBLISHED OPINION |
| Appellant. | ) ) ) | |

SMITH, J. — Eddie Bauer LLC (Eddie Bauer) leased space in a mall from BFO Factory Shoppes LLC. The original lease entailed a rental structure with three components. And in the event that the mall's occupancy fell below 75 percent, a provision in a rider to the lease contemplated that Eddie Bauer could pay a reduced rental amount in lieu of one of the distinct rental components. The parties amended the lease four times between 2004 and 2016. The issue on appeal is whether one of the amendments superseded or overrode the reduced rental provision. We conclude that it did, and we therefore affirm the trial court's order granting summary judgment in favor of BFO.

FACTS

In 2002, Eddie Bauer's predecessor, Eddie Bauer Inc. (EB Inc.), leased space from BFO at a shopping mall in Burlington, Washington. The lease agreement provided

that EB Inc. would pay the sum of three rental components: (1) "Annual Basic Rental," (2) "Annual Percentage Rental," and (3) "Additional Rental." The lease agreement defined "Annual Basic Rental" as "the product of Fifteen Dollars ($15.00) multiplied by the number of square feet contained in Tenant's Floor Area." Annual Percentage Rental was calculated as three percent "of the amount by which [EB Inc.'s] Annual Gross Sales exceed[ed] three million dollars." Additional Rental encompassed "all additional sums, charges or amounts of whatever nature."

The parties executed the lease agreement in conjunction with a rider which was "fully incorporated into th[e] Lease" agreement. The rider provided that in the event of a conflict between the rider and the lease agreement, its provisions "are paramount and the Lease Agreement shall be construed accordingly." Section 4 of the rider (section 4) provided that in the event that the occupancy at the mall fell below 75 percent of the available square footage, EB Inc. was entitled to pay "a percentage rent equal to three percent (3%) of Gross Sales" (Reduced Rent) "in lieu of Annual Basic Rental." Thus, EB Inc. could pay the lesser of Annual Basic Rental or three percent of gross sales. Section 4 did not affect EB Inc.'s obligation to pay Annual Percentage Rental or Additional Rental.

On February 3, 2004, the parties amended the lease agreement (First Amendment) and thereby extended the term of the lease. The First Amendment modified all three components, which continued to be due. As referred to herein, the "lease" means the lease agreement, the rider as incorporated therein, and the First Amendment.

In 2009, EB Inc. filed for chapter 11 bankruptcy. Eddie Bauer purchased some of

Eddie Bauer Inc.'s assets and assumed certain commercial leases.  In December 2009, in order to assume the lease, the parties amended the lease (Second Amendment).  Under the Second Amendment and "[n]otwithstanding anything to the contrary in the Lease," Eddie Bauer was to pay "Substitute Rent," defined as "the greater of (a) $150,000 per Rental Year, or (b) 10% of Tenant's Gross Sales," "in lieu of Annual Basic Rent, Annual Percentage Rent and Additional Rent."  (Boldface omitted.)  The parties also agreed that "[t]he Lease as assumed and . . . amended shall remain in full force and effect in accordance with the terms thereof."

On February 15, 2013, the parties again amended the lease agreement (Third Amendment).  The Third Amendment provided that "[t]he modifications contained herein are made to correct and clarify the Lease [agreement and prior amendments] to reflect the agreements of the parties and except as amended herein, all of the terms, covenants and conditions in said Lease [agreement and prior amendments] remain in full force and effect."  The Third Amendment increased rent to "the greater of (i) $160,000 ("Basic Rent") per Rental Year or (ii) 10% of Tenant's Gross Sales . . . per Rental Year."  As with the Second Amendment, rent under the Third Amendment was "in lieu and satisfaction of Annual Basic Rent, Annual Percentage Rent and Additional Rent."

On January 11, 2016, the parties executed a fourth amendment (Fourth Amendment), which was in effect at the time this lawsuit commenced.  The Fourth Amendment required Eddie Bauer to pay "Gross Annual Basic Rent" of $170,000 and 10 percent of Gross Sales as Annual Percentage Rent.  According to the Fourth Amendment, "[t]he payment of Gross Annual Basic Rent [wa]s in lieu of and in full

satisfaction of the Additional Rent, which shall mean all additional sums, changes or amounts of whatever nature which [Eddie Bauer was] required to pay under the Lease" agreement and prior amendments. The Fourth Amendment was "made to correct and clarify the Lease [agreement and prior amendments] to reflect the agreements of the parties." It provided that "except as amended herein, all of the terms, covenants and conditions in [the lease agreement and prior amendments] remain in full force and effect."

Beginning in February 2016, BFO failed to lease more than 75 percent of the space available at the mall. Eddie Bauer realized this in June 2017 and provided notice to BFO that it would begin to pay Reduced Rent pursuant to section 4. Shortly thereafter, Eddie Bauer notified BFO that it believed it was entitled to a refund for the amount it previously had paid above that required by section 4. BFO disagreed, arguing that the Second Amendment superseded section 4. But Eddie Bauer nonetheless discontinued its rental payments.

Thereafter, BFO filed a complaint for declaratory judgment and damages for breach of lease in Skagit County Superior Court, and both parties moved for summary judgment. The trial court determined that section 4 was superseded and replaced because the "language[ involving] substitute rent . . . delete[s] or negate[s] or remove[s] th[e] three components" of Annual Basic Rental, Annual Percentage Rental, and Additional Rental and that "the rider, which attaches itself to annual basic rental, cannot be enforced." It therefore granted BFO's motion for summary judgment and denied Eddie Bauer's motion. The court also determined that Eddie Bauer breached the lease "by failing to pay rent as provided in the Fourth Amendment." The court ordered Eddie

4

Bauer to pay "outstanding rent, interest, attorney's fees, and late fees." Eddie Bauer appeals.

ANALYSIS

Section 4 and the Lease Amendments

Eddie Bauer contends that the trial court erred when it determined that the amendments to the lease agreement replaced and superseded section 4. Accordingly, it contends that the trial court erred by denying its motion for summary judgment and instead granting BFO's motion. We disagree.

We review an order granting summary judgment de novo, viewing "the evidence and all reasonable inferences therefrom . . . in the light most favorable to the . . . nonmoving party." Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 501, 115 P.3d 262 (2005); Young v. Key Pharm., Inc., 112 Wn.2d 216, 226, 770 P.2d 182 (1989). "[S]ummary judgment is appropriate where there is 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012) (second alteration in original) (quoting CR 56(c)).

To determine whether summary judgment was proper, we must interpret the lease. Here, the parties agree that the plain language of the lease agreement and its amendments resolve this dispute and that we need not consider any extrinsic evidence. Thus, we interpret the lease de novo. See Keystone Masonry, Inc. v. Garco Constr., Inc., 135 Wn. App. 927, 932, 147 P.3d 610 (2006) (holding that an appellate court reviews contract interpretation de novo in the absence of disputed facts); Viking Bank v. Firgrove Commons 3, LLC, 183 Wn. App. 706, 711, 334 P.3d 116 (2014) ("[C]ontract

interpretation is a question of law when the interpretation does not depend on the use of extrinsic evidence.").

The court's "primary objective in contract interpretation is to ascertain the mutual intent of the parties at the time they executed the contract." Viking Bank, 183 Wn. App. at 712. To ascertain that intent, we focus on "what the parties wrote, giving words in a contract their ordinary, usual, and popular meaning unless the agreement as a whole clearly demonstrates a contrary intent." Renfro v. Kaur, 156 Wn. App. 655, 662, 235 P.3d 800 (2010) (citing Hearst Commc'ns, Inc., 154 Wn.2d at 504).

Although Eddie Bauer raises several challenges to the trial court's interpretation of the lease agreement and its amendments, the dispositive issue is whether the plain language of the Second Amendment overrode the applicability of section 4. The plain language of section 4 was clear: Eddie Bauer's payment of Reduced Rent was "in lieu of"—or in place of—the payment of Annual Basic Rental. See BLACK'S LAW DICTIONARY 907 (10th ed. 2014) (The ordinary definition of "in lieu of" is "[i]nstead of" or "in place of."). But the plain language of the Second Amendment also was clear: Substitute Rent replaced the three distinct components of rent, including Annual Basic Rental. Eddie Bauer's ability to pay Reduced Rent pursuant to section 4 hinged on the existence of the Annual Basic Rental component for it to replace. Under the Second Amendment and thereafter, Annual Basic Rental ceased to exist. It follows that Eddie Bauer cannot pay Reduced Rent—pursuant to section 4—in place of a category of rent which was overridden and replaced by Substitute Rent.

Additionally, the Second Amendment superseded or overrode "anything to the contrary" in the lease agreement or the rider, and "[t]he terms of th[e Second]

6

Amendment supersede any provisions of the Lease that are in conflict with the terms of th[e] amendment." To this end, section 4 conflicts with the payment of Substitute Rent because it requires payment of the Annual Basic Rental component, which was eliminated by the Second Amendment. In short, there is only one reasonable interpretation of the Second Amendment, that is, the Second Amendment replaced the three-part rental structure without which Eddie Bauer cannot pay Reduced Rent because the Substitute Rent formulae created by the Second Amendment superseded section 4. Thus, the trial court did not err by granting summary judgment in favor of BFO. See Renfro, 156 Wn. App. at 661 ("'In the contract interpretation context, [s]ummary judgment is . . . proper if the parties' written contract, viewed in the light of the parties' other objective manifestations,'" has only one reasonable meaning. (first alteration in original) (internal quotation marks omitted) (quoting Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 83, 60 P.3d 1245 (2003)).

Eddie Bauer's arguments to the contrary are unpersuasive. Eddie Bauer contends that the Second Amendment did not override section 4 because section 4 was not a rental obligation. But the Second Amendment does not assert that it supersedes only rental obligations contrary to the lease. Instead, it provides that Substitute Rent is due instead of the three-part rent structure, "[n]otwithstanding *anything* to the contrary in the Lease." (Emphasis added.) And as discussed, section 4 is inconsistent with the payment of Substitute Rent. Therefore, Eddie Bauer's contention fails.

Eddie Bauer further asserts that the parties must replace or modify the lease agreement expressly and that section 4 was not expressly replaced or modified. However, as discussed above, the Second Amendment overrode and "*supersede[d]*

7

*any* provisions of the Lease" inconsistent with Substitute Rent. (Emphasis added.) And because section 4 is inconsistent, it was replaced or overridden. Therefore, we disagree with Eddie Bauer's assertion.

Eddie Bauer next contends that it would not have agreed either to the Second Amendment or to assume the lease had it known section 4 no longer applied. But the parties' objective manifestations are clear in the lease's plain language, so we are not persuaded by Eddie Bauer's unexpressed subjective intent. See Renfro, 156 Wn. App. at 662 ("Washington courts follow the objective manifestation theory of contracts, looking for the parties' intent as objectively manifested rather than their unexpressed subjective intent.").

In the alternative, Eddie Bauer contends that the Fourth Amendment is consistent with section 4, and it asserts that the Fourth Amendment, in effect, revived the three-part rental structure because Substitute Rent no longer appears therein. However, the Fourth Amendment does not revive the three-part rental structure. Rather, it provides a two-part rental structure including Annual Percentage Rent[1] and "Gross Annual Basic Rent." Gross Annual Basic Rent "is in lieu of and in full satisfaction of the Additional Rent." The Fourth Amendment does not mention Annual Basic Rental. And we are unpersuaded by Eddie Bauer's attempt to conflate Gross Annual Basic Rent with Annual Basic Rental. Thus, under the Fourth Amendment, Annual Basic Rental and Additional Rental still do not exist and section 4 cannot apply.

---

[1] Annual Percentage Rent is 10 percent of Eddie Bauer's "Gross Sales in excess of" $1.7 million.

As a final matter, Eddie Bauer contends that because section 4 was not superseded or overridden, Eddie Bauer did not breach the lease. Because we conclude that section 4 was superseded and Eddie Bauer stopped paying rent in June 2017 in reliance on the applicability of the section 4, we disagree.

## Attorney Fees

Eddie Bauer contends that the trial court erred in awarding fees and costs to BFO, and both parties request fees on appeal. Because BFO is the prevailing party on appeal, we award BFO its fees and costs and affirm the award below.

"When a contract provides for an attorney fee award in the trial court, the party prevailing before this court may seek reasonable attorney fees incurred on appeal." Viking Bank, 183 Wn. App. at 717-18. Here, sections 17.2 and 17.3 of the lease and section 3 of the rider provide the authority for awarding fees: "If either party shall bring an action against the other to enforce or interpret the terms of this lease or otherwise arising out of this lease, the prevailing party in such action shall be entitled to recover its costs of suit and reasonable attorney's fees." Neither party contends that these provisions have been amended or replaced. Because BFO was the prevailing party at the trial court and is the prevailing party on appeal and because the lease provisions apply, we affirm the trial court's award of fees and award BFO fees on appeal subject to its compliance with RAP 18.1.

We affirm.

_Smith, J._

WE CONCUR:

_Bowman, J_          _Andrus, J._